JUDGE DAVID BRIONES

FILED
2023 SEP -1  AM 11: 36
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MANUEL GUADIAN,<br><br>Plaintiff,<br><br>v.<br><br>UNIQ CREDIT SOLUTIONS LLC<br>a Delaware Limited Liability Company<br>and **DEBT MANAGE SOLUTIONS LLC**<br>a California Limited Liability Company<br><br>Defendants. | **EP-23-CV-332-DB** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff Manuel Guadian is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant Uniq Credit Solutions LLC ("UNIQ" "Defendant") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Best Delaware Registered Agent LLC at 8 The Green, Suite F Dover DE, 19901.

3. Defendant DEBT MANAGE SOLUTIONS LLC ("DMS") is a corporation organized and existing under the laws of California and can be served via registered agent Jerry Yirenkyi at 115 Calderon Irvine, CA 92618.

4. Uniq Credit Solutions LLC ("Uniq" "Defendant"), Debt Manage Solutions LLC ("DMS") are collectively known as (Defendants).

1

## JURISDICTION AND VENUE:

5. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

6. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

7. This Court has personal jurisdiction over Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

18.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.  The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.  Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

21.  Plaintiff successfully registered his personal cell phone number ending in -5579 on the National Do-Not-Call Registry since January 3, 2023, which was more than 31 days prior to receiving the alleged calls.

22.  Plaintiff never asked the National Do-Not-Call Registry administrator to remove his phone number from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

4

23. Defendant UNIQ offers debt relief services to consumers.

24. Defendant generates and qualify new clients through illegal telemarketing calls that violate the TCPA.

25. Defendant DMS is owned and controlled by Jerry Yirenkyi.

26. Defendant DMS is well aware that the unauthorized phone calls being made on their behalf by UNIQ soliciting Defendants debt relief services violate the TCPA.

27. Defendant DMS willfully accepts leads from UNIQ that are generated through illegal telemarketing because these leads benefit Defendant financially.

28. Plaintiff received at least four (4) unauthorized prerecorded voice message phone calls to his personal cell phone ending in 5579 calling on behalf of and/or from Defendant soliciting their debt relief services within a thirty-day period ("the calls").

29. **Calls# 1-4-** Plaintiff received calls to his personal cell phone ending in 5579 from a prerecorded message soliciting debt relief services on behalf of Defendant.

30. The prerecorded voice message is as follows:

"Hi this is Joyce Morgan calling from the hardship department 949-287-7703 I have some exciting news for those who have experienced recent loan application denials you may now qualify for the new 2023 financial hardship program. This unique program allows you to eliminate the debt that's weighing down your credit and causing you to be declined Please note that this is not a loan it's actually better than a loan it's a deposit-based program with zero interest you need to qualify for up to $55,000 and maybe more in principal balance reduction and improve your credit profile. Don't miss out on this amazing opportunity as the program is coming to an end this Friday. To find out more please give me a call back at 949-287-7703 again that's 949-287-7703. I look forward to helping you take advantage of this life-changing offer. "Thank you so much and have a blessed day".

31. The table below displays the artificial prerecorded calls made to Plaintiff by Defendant.

**Table A:**

| | | | |
|---|---|---|---|
| 6/19/2023 | 9:42 AM | 281-815-8695 | prerecorded voice message soliciting debt relief services left call back number of 979-287-7703 |

| | | | |
|---|---|---|---|
| 6/20/2023 | 2:11 PM | 602-898-5962 | **prerecorded voice message soliciting debt relief services left call back number of 979-287-7703** |
| 6/21/2023 | 2:14 PM | 510-518-1197 | **prerecorded voice message soliciting debt relief services left call back number of 979-287-7703** |
| 6/27/2023 | 11:19 AM | 903-304-0257 | **prerecorded voice message soliciting debt relief services left call back number of 979-287-7703** |

32. Plaintiff was extremely aggravated for continuing to receive calls from telemarketers soliciting debt relief services and followed the prompts and spoke to a Nancy Garcia who identified herself as a representative from UNIQ and Plaintiff advised he was interested in their services for the sole purpose of identifying the company responsible for the calls.

33. Nancy then asked Plaintiff qualifying questions about his debt and monthly income and solicited Plaintiff for a "debt relief program" on behalf of Defendant.

34. Plaintiff received an email from Nancy from "nancy.garcia@uniqmarketing.net" and "docs@email.pandadoc.net" with a DocuSign signature request with the contract.

35. The email Plaintiff received from Nancy revealed the true identity of the company Nancy was with and the company responsible for the alleged phone calls.

36. Plaintiff advised Nancy; he would call her back if he was interested in the debt relief program after being sent the contract.

37. Plaintiff never gave his prior express written consent to receive any of the calls.

38. Plaintiff has never had any business relationship with Defendants and never knew who Defendants were prior to the calls being made to his personal cell phone.

39. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

40.  Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy for their financial gain.

41.  Defendants refuse to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendants financially.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101
### (All defendants)

42.  The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

43.  Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

44.  The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

45.  Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

46. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

### (All defendants)

47. Defendant's artificial prerecorded voice messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

48. Defendant's artificial prerecorded voice messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

49. Defendant's artificial prerecorded voice messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

50. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## Violations of the Texas Business and Commerce Code 305.053

### (All defendants)

51. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

52. The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### Plaintiff's cell phone is a residential number

53.  The text messages were to Plaintiff's cellular phone ending in 5579 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Manuel Guadian prays for judgment against the Defendants severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for four (4) calls.

E.  An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for four (4) calls.

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporations for four (4) calls.

G. An award to Mr. Guadian of damages, as allowed by law under the TCPA and Texas state law;

H. An award to Mr. Guadian of interest, costs, and attorneys' fees, as allowed by law and equity.

I. Such further relief as the Court deems necessary, just, and proper.

September 1, 2023,                    Respectfully submitted,

Manuel Guadian
Plaintiff, Pro Se
3805 Tierra Fiji Ln
El Paso, Texas 79938
915-472-5579
maguadianjr@gmail.com